FILED

2015 JUL 30 AM 11: 36

CLERK U.S. DISTRICT COURT
CENTRAL DIST. OF CALIF.
LOS ANGELES

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

| UNITED STATES OF AMERICA, | CR No. CR15-0427 |
|---|---|
| Plaintiff, | **I N F O R M A T I O N** |
| v. | [18 U.S.C. § 1349: Conspiracy to Commit Health Care Fraud] |
| EDDIESON LEGASPI, | |
| Defendant. | |

The United States Attorney charges:

[18 U.S.C. § 1349]

A. **INTRODUCTORY ALLEGATIONS**

At all times relevant to this Information:

**Defendant and Company A**

1. Defendant EDDIESON LEGASPI ("defendant LEGASPI") was a resident of Lomita, California, within the Central District of California.

2. Beginning in or about April 2009 and continuing through at least in or about December 2012, defendant LEGASPI worked for Company A, a California corporation, which was located at various sites in Los Angeles and Orange Counties, within the Central District of California.

3. Rehab Synergy, Inc. ("Rehab Synergy") was a California corporation, owned and operated by defendant LEGASPI, which was located in Los Angeles County, within the Central District of California.

**Co-Conspirators**

4. Co-conspirator Marlon Songco was the president of Company A. Co-conspirators Marlon Songco, A, and B owned and controlled Company A.

5. A bank account for Company A was maintained at J.P. Morgan Chase Bank, N.A., with company account ending in number 5060 ("Company A Bank Account").

**The Medicare Program**

6. Medicare was a federal health care benefit program, affecting commerce, which provided benefits to individuals who were over the age of 65 or disabled. Medicare was administered by the Centers for Medicare and Medicaid Services ("CMS"), a federal agency under the United States Department of Health and Human Services ("HHS").

7. Individuals who qualified for Medicare benefits were referred to as Medicare "beneficiaries." Each Medicare beneficiary was given a Health Identification Card containing a unique identification number ("HICN").

8. Health care providers who provided medical services that were reimbursed by Medicare were referred to as Medicare "providers."

9. CMS contracted with private companies to certify providers for participation in the Medicare program and monitor their compliance with Medicare standards, to process and pay claims, and to

perform program safeguard functions, such as identifying and reviewing suspect claims.

10. To obtain reimbursement from Medicare, a provider had to apply for and obtain a provider number. By signing the provider application, the provider agreed to (a) abide by Medicare rules and regulations, and (b) not submit claims to Medicare knowing they were false or fraudulent or with deliberate ignorance or reckless disregard of their truth or falsity.

11. If Medicare approved a provider's application, Medicare assigned the provider a Medicare provider number, which enabled the provider to submit claims to Medicare for services rendered to Medicare beneficiaries.

12. Medicare reimbursed providers only for services, including physical therapy, that (a) were medically necessary to the treatment of a beneficiary's illness or injury, (b) were prescribed by a beneficiary's physician or a qualified physician's assistant acting under the supervision of a physician, and (c) were provided in accordance with Medicare regulations and guidelines that governed whether a particular service or product would be reimbursed by Medicare.

B. **THE OBJECT OF THE CONSPIRACY**

13. Beginning in or about April 2009 and continuing until at least in or about December 2012, in Los Angeles County, within the Central District of California, and elsewhere, defendant LEGASPI, together with co-conspirators Marlon Songco, A, and B, and others known and unknown to the United States Attorney, knowingly combined, conspired, and agreed to commit the following offense against the

United States: health care fraud, in violation of Title 18, United States Code, Section 1347.

C. **MANNER AND MEANS OF THE CONSPIRACY**

14. The object of the conspiracy was carried out, and to be carried out, in substance, as follows:

    a. Co-conspirators Marlon Songco, A, and B would pay Rehab Synergy for defendant LEGASPI's performance of physical therapy services for Medicare beneficiaries at Company A.

    b. As defendant LEGASPI then well knew, co-conspirators Marlon Songco, A, and B hired defendant LEGASPI as a licensed physical therapist (even though defendant LEGASPI continued to work full-time at other employment) to perform patient evaluations and re-evaluations, rather than follow-up treatment, for Medicare beneficiaries at Company A. Defendant LEGASPI evaluated and re-evaluated some, but not all, of the beneficiaries and created plans of physical therapy treatment, even though, as defendant LEGASPI then well knew and intended, many of the beneficiaries never received any follow-up physical therapy services.

    c. While at Company A, beneficiaries would often receive only massage and acupuncture (services defendant LEGASPI then well knew were not covered by Medicare) from individuals not licensed to perform physical therapy.

    d. As defendant LEGASPI then well knew, co-conspirators Marlon Songco, A, and B would use a medical billing service, which defendant later learned was Accubill Medical Billing Services ("Accubill"), to submit claims to Medicare for reimbursement for physical therapy services.

e.  As defendant LEGASPI then well knew, co-conspirators Marlon Songco, A, and B provided information to Accubill, including the names, HICNs, and other patient information of the Medicare beneficiaries, as well as falsified records that made it appear as though the beneficiaries had received physical therapy treatments from defendant LEGASPI, knowing and intending that Accubill would use this falsified information to submit false and fraudulent claims to Medicare for physical therapy.

f.  Company A received payment from Medicare for those false and fraudulent claims, and the payments were deposited into the Company A Bank Account, to which co-conspirators Marlon Songco, A, and B had joint access and control.

g.  Approximately every two weeks from May 2009 to December 2012, defendant LEGASPI received between $1,500 and $2,200 of the Medicare payments deposited into the Company A Bank Account by co-conspirators Marlon Songco, A, and B as payment for the use of defendant LEGASPI's Medicare provider number and for the submission of fraudulent and improper claims to Medicare for physical therapy.

h.  Between in or about April 2009 and in or about December 2012, Company A submitted approximately $2,310,400 in false and fraudulent claims to Medicare, for which Medicare paid approximately $1,266,148, deposited into the Company A Bank Account, for physical therapy services allegedly performed by defendant LEGASPI.  Defendant LEGASPI, either directly or through Rehab Synergy, received approximately $170,500 from Company A for defendant LEGASPI's participation in the conspiracy, including providing the use of his Medicare provider number to co-conspirators Marlon Songco,

A, and B to be used for the submission of fraudulent and improper claims to Medicare for physical therapy.

D. **OVERT ACTS**

15. In furtherance of the conspiracy and to accomplish its object, defendant LEGASPI, together with co-conspirators Marlon Songco, A, and B, and others known and unknown to the United States Attorney, committed and willfully caused others to commit, the following overt acts, among others, in the Central District of California and elsewhere:

Overt Act No. 1: On or about May 25, 2009, defendant LEGASPI received and deposited a check payable from co-conspirator Marlon Songco to defendant LEGASPI for $1,500.00, drawn on the Company A Bank Account, paid for the use of defendant LEGASPI's Medicare provider number.

Overt Act No. 2: Between on or about July 2, 2010, and on or about July 6, 2010, defendant LEGASPI and co-conspirators Marlon Songco, A, and B caused to be submitted to Medicare, false and fraudulent claims for physical therapy services allegedly provided to 18 Medicare beneficiaries (comprising more than 20 hours of purported treatment) on June 28, 2010, by defendant LEGASPI, knowing that defendant LEGASPI did not, in fact, perform those physical therapy services.

Overt Act No. 3: On or about July 1, 2011, defendant LEGASPI and co-conspirators Marlon Songco, A, and B caused to be submitted to Medicare, false and fraudulent claims for physical therapy services allegedly provided to 14 Medicare beneficiaries (comprising more than 17 hours of purported treatment) on June 17, 2011, by defendant

LEGASPI, knowing that defendant LEGASPI did not, in fact, perform those physical therapy services.

Overt Act No. 4: Between on or about February 29, 2012, and on or about March 16, 2012, defendant LEGASPI and co-conspirators Marlon Songco, A, and B caused to be submitted to Medicare, false and fraudulent claims for physical therapy services allegedly provided to 12 Medicare beneficiaries (comprising more than 14 hours of purported treatment) on February 20, 2012, by defendant LEGASPI, knowing that defendant LEGASPI did not, in fact, perform those physical therapy services.

Overt Act No. 5: On or about December 10, 2012, defendant LEGASPI received and deposited a check from co-conspirator A payable to Rehab Synergy for $2,200.00, drawn on the Company A Bank Account, paid for the use of defendant LEGASPI's Medicare provider number.

EILEEN M. DECKER
United States Attorney

*/s/ R. E. Dugdale*

ROBERT E. DUGDALE
Assistant United States Attorney
Chief, Criminal Division

RICHARD E. ROBINSON
Assistant United States Attorney
Chief, Major Frauds Section

JAMES A. BOWMAN
Assistant United States Attorney
Deputy Chief, Major Frauds Section

BYRON J. MCLAIN
Assistant United States Attorney
Major Frauds Section